FILED
05/18/2018
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 13, 2018 Session

## STATE OF TENNESSEE v. NATHANIEL MORTON CHAMPION

**Appeal from the Circuit Court for Coffee County**
**No. 40424     Vanessa Jackson, Judge**

_____

## No. M2016-01648-CCA-R3-CD

_____

A Coffee County jury convicted the Defendant, Nathaniel Morton Champion, of possession of contraband in a penal institution, a Class C felony, for which the trial court imposed an eight-year sentence to run consecutively to the Defendant's prior sentences. On appeal, the Defendant contends that: (1) the trial court erred by denying his motion to dismiss the indictment based on the State's failure to preserve evidence pursuant to *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999); (2) the evidence introduced at trial was insufficient to support his conviction; (3) the trial court abused its discretion by denying the Defendant's request for a continuance based on the failure of a defense witness to appear to testify at trial; (4) the Defendant's waiver of the right to counsel was not knowing and intelligent; and (5) the trial court abused its discretion by enhancing the Defendant's sentence to eight years and ordering consecutive sentencing. Following a thorough review, we affirm the Defendant's judgment of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Jeremy W. Parham (on appeal), Manchester, Tennessee, and J. Brad Hannah (elbow counsel at trial), Smithville, Tennessee, for the appellant, Nathaniel Morton Champion.

Herbert H. Slatery III, Attorney General and Reporter; Richard D. Douglas, Assistant Attorney General; Craig Northcott, District Attorney General; and Brittany Hoskins, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Factual and Procedural Background

*Motion to Dismiss Indictment*

In August 2013, the Coffee County Grand Jury indicted the Defendant for one count of possession of a controlled substance in a penal institution. Following his indictment, trial counsel was appointed to represent the Defendant. On July 9, 2014, the Defendant filed a motion to dismiss the indictment based on the State's failure to preserve the video recording of the Defendant's booking at the Coffee County Jail. The Defendant argued pursuant to *Ferguson* that he was deprived of the fundamental right to a fair trial. The trial court conducted an evidentiary hearing before trial in consideration of the Defendant's motion to dismiss the indictment. Deputy Sharketti testified that he conducted a pat-down search of the Defendant for weapons before he transported the Defendant to the Coffee County Jail. Upon arrival at the jail, Deputy Sharketti asked the Defendant several times whether he had any weapons or drugs, and the deputy told the Defendant that those items were prohibited inside the jail. The Defendant denied having any drugs or weapons. Once in the booking area of the jail, the Defendant was searched by a jailer. Deputy Sharketti observed the search and saw the jailer pull a "rolled-up," "flattened-out" dollar bill from the Defendant's front pocket. When the jailer placed the dollar into a "slot" that went into the jail's control room, Deputy Sharketti saw a "white/tan crystal-like substance" spill out of the dollar bill. Deputy Sharketti testified that he did not notice any unusual reaction from the Defendant following the discovery of the substance. However, Deputy Sharketti recalled at trial that the Defendant said, "[T]hat's not mine, I didn't know it was there."

Captain Watkins testified that, although there was a video surveillance system in the booking area of the Coffee County Jail, there was "only so much storage space" on the video surveillance system and, video would automatically record over itself after three to five weeks, depending on the amount of activity in the area of the cameras. Captain Watkins explained that he had the capability of saving a particular recording if notified of "the specific date and time of the incident[] and the location of the incident." However, he never received a request for the video recording of the Defendant's booking to be saved.

The trial court determined that the video recording of the Defendant being booked into the jail had "potential exculpatory value" and was "probably constitutionally material." The trial court found that there was not "a great deal of negligence involved." The court noted that Captain Watkins had no notice that the video recording would be of any probative value, and the video recording was recorded over "just in the ordinary

- 2 -

course of the way things worked because of the way the system [was] set up." Regarding the significance of the evidence in light of its probative value and the reliability of substitute evidence, the trial court noted that there was not dispute that a dollar bill containing a substance was found in the Defendant's pocket and that there were no allegations that the evidence was "planted" on the Defendant. The trial court found that Deputy Sharketti's testimony regarding the Defendant's reaction to the discovery was a "type of secondary evidence" and found that the deputy's testimony was "fairly reliable." When it considered these factors along with the sufficiency of the other evidence against the Defendant, the trial court determined that "the extreme remedy of dismissal is not appropriate in this case" and that the appropriate remedy was for it to provide an instruction to the jury concerning inferences that jurors may draw from the fact that the tape was not preserved.

*Motion to Dismiss Appointed Counsel*

Approximately three months before his scheduled trial, the Defendant filed a pro se motion to dismiss appointed counsel. In his motion, the Defendant asserted that the trial court should dismiss trial counsel because appointed counsel had refused to "file a motion to suppress the evidence knowing the parole violation warrant was obtained by a false affidavit"; "file a claim of ineffective assistance of counsel at the preliminary hearing stage in a motion to suppress"; and "challenge the jurisdiction" of the trial court. Appointed counsel also filed a motion to withdraw from the case. Following an initial hearing on the motions, the trial court granted the Defendant a two-day continuance to consider whether he wanted appointed counsel to continue to represent him or whether he wished to proceed pro se.[1]

At a second hearing, the trial court noted that the Defendant had been given additional time to weigh his options because of the "serious" nature of the charges and stated that the Defendant "would be better served if [he] had an attorney." The trial court asked the Defendant if he had the opportunity to contemplate the matter, and the Defendant responded affirmatively. The trial court noted that appointed counsel "did an excellent job" representing the Defendant "in all of the hearings up to this point" but that it would grant the Defendant's motion to dismiss appointed counsel, if that was what the Defendant still wanted. The trial court advised the Defendant that it was his choice and that it wanted to "make sure [the Defendant] understood what [he was] doing." Further, the trial court advised the Defendant that it had previously appointed counsel to represent him and that the court was "not going to appoint anyone else." The trial court explained that the Defendant could either go forward with appointed counsel, retain his own counsel, or represent himself. The Defendant stated that he wanted to represent himself.

---

[1] A transcript of this hearing was not included in the record on appeal.

The following colloquy then took place between the trial court and the Defendant:

THE COURT: All right. Now, let me just -- you did an excellent job on your motion. And so you do have some knowledge of the law, apparently. Is that correct . . .

THE DEFENDANT: Not really. I'm -- well, some. Some, I guess.

THE COURT: Some, uh-huh.

THE DEFENDANT: I'm trying.

THE COURT: Have you ever represented yourself before in a criminal matter?

THE DEFENDANT: Just a few little hearings.

THE COURT: Okay. All right. And you know you are charged in this case with possession of a controlled substance in a penal institution, which is a Class C felony. You understand that, sir?

THE DEFENDANT: Yes, ma'am. Yes, ma'am.

THE COURT: And that is a very serious offense. I -- the range of punishment, that would, of course, depend upon what range offender you are, but it -- you can get any -- if you were a Range I offender, it would be three to six years. But depending, as I said, upon the range, you might could go all the way up to 15 years on that. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: So it's very serious. So you-- you might be better off to have an attorney since you've said you hadn't studied the law. You're making --

THE DEFENDANT: Well, I don't think my enhancements will be up to 15 years.

THE COURT: All right.

- 4 -

THE DEFENDANT: That's for sure.

THE COURT: But it's still serious.

THE DEFENDANT: It's very serious.

THE COURT: Three to six years is pretty serious . . .

THE DEFENDANT: Six months is serious --

THE COURT: Yes, sir.

THE DEFENDANT: -- to be locked up and incarcerated.

THE COURT: It would be to me.  So are you sure you --

THE DEFENDANT: Yes, ma'am.

THE COURT: You sure you want to represent yourself --

THE DEFENDANT: Yes, ma'am.

THE COURT: -- knowing how serious all this is?

THE DEFENDANT: Yes, ma'am, I would rather go that route.

THE COURT: Okay.  All right.  I am going to appoint someone to be your -- to sit with you.  They won't be representing you.  You won't be – they'll just be there to assist you during the course of the trial if you have questions concerning evidence, Rules of Evidence, and those sorts of things.  But they're not going to go out and do research for you and things like that prior to the trial.

THE DEFENDANT: All right.

THE COURT: You understand, you're going to have all that burden yourself?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. So this is -- this decision to represent yourself rather than to accept the representation by [appointed counsel] is your voluntary choice, correct?

THE DEFENDANT: Yes, ma'am. Yes, ma'am, totally my choice.

THE COURT: Well then, I find that the [D]efendant has knowingly and voluntarily waived his right to counsel, and I'll permit you to represent yourself. I will appoint someone to sit with you during the trial and assist you with legal issues that might arise, evidentiary issues, things like that.

The trial court entered a written order granting the Defendant's motion to dismiss appointed trial counsel. In its findings of fact and conclusions of law, the trial court found that appointed counsel had "zealously" and "effectively" represented the Defendant throughout all prior proceedings in the Defendant's case. The trial court found that the Defendant had "voluntarily decided to stop cooperating with counsel and has now requested that [appointed counsel] no longer represent him." The trial court stated that it had given the Defendant two days to consider how he wished to proceed—that he could either begin cooperating with appointed counsel again or proceed pro se. The trial court found that, during the second hearing, the Defendant indicated that he wished to waive his right to counsel. The trial court found that the Defendant was familiar with the criminal justice system based on previous criminal prosecutions against him. The trial court also found that the Defendant was "well-spoken and intelligent" and that the Defendant acknowledged that he understood the charges against him. The trial court found that the Defendant was afforded counsel but that he was "now waiving his right to appointed counsel knowingly and voluntarily." The trial court then appointed elbow counsel to assist the Defendant at trial.

*Trial*

At trial, Deputy Stephen Sharketti of the Coffee County Sheriff's Department (CCSD) testified that on the night of March 7, 2013, he was directed by the CCSD's communications center to go to the Coffee County/Franklin County line to transport the Defendant to the Coffee County Jail. Deputy Sharketti explained that the Defendant was in the custody of the Franklin County Sheriff's Department but that Coffee County had a warrant for his arrest. Before placing the Defendant in the back of his patrol car, Deputy Sharketti performed a "quick pat-down search" of the Defendant, looking for "anything that's bulky that really might hurt [Deputy Sharketti][.]" The Defendant was not handcuffed because the Defendant did not give any indication that he was violent, and the Defendant was cooperative with Deputy Sharketti. Deputy Sharketti testified that there was nothing in the back of his patrol car when he picked up the Defendant; he searched

the space before transporting the Defendant. Deputy Sharketti stated that, before bringing the Defendant into the jail, he explained the consequences of bringing weapons or drugs into the facility. He explained, "I made it very clear to [the Defendant], if he enters the facility with any drugs or weapons, that [was] an additional charge." The Defendant denied having any weapons or drugs on his person. Deputy Sharketti testified that it was reasonable to assume that, after being asked three times, the Defendant would know whether he had contraband in his possession. When they walked into the secure booking area of the jail, the "searching officer," Deputy Trey Scott, met them. Deputy Scott conducted a full search of the Defendant. He located a folded dollar bill in the Defendant's front pants pocket. When Deputy Scott placed the dollar into the "pass-through tray,"[2] a "white crystal powdery-like substance fell out [of] the sides of the dollar bill." The Defendant said, "[T]hat's not mine, I didn't know it was there." Deputy Sharketti put on sterile gloves and collected the dollar and the substance. He weighed the substance on a scale and found that it weighed 0.9 grams. Deputy Sharketti then conducted a field test of the substance and found that it contained cocaine base. After testing, Deputy Sharketti placed the dollar bill and the substance into a sealed evidence bag. Deputy Sharketti photographed the evidence.

Deputy Sharketti explained that the booking area contained cameras with video and audio capability. Deputy Sharketti stated that he was not aware that video recordings were deleted after thirty days and that it was not held as a permanent backup. In any event, Deputy Sharketti did not believe that there was any reason to obtain the video recording of this incident. He stated, "It was pretty . . . clear that [the Defendant] came into the booking area, into the jail with the substance. It was actually taken from his possession, and he was afforded at least three opportunities to provide that substance before we came in through that door." There was nothing about the incident that stood out to Deputy Sharketti that led him to think he needed to preserve the video recording as evidence.

Deputy Trey Scott testified that in March 2013, he worked as a corrections officer at the Coffee County Jail. Deputy Scott was working on the night of March 7, when the Defendant was booked into the jail. Once inside the booking area, Deputy Scott had the Defendant place his hands on the metal tray that separated the booking area and the control room. When Deputy Scott conducted a full search of the Defendant, he found a dollar bill in the Defendant's right front "change pocket." Deputy Scott pulled out the dollar and noticed that it "had a substance in it." Deputy Sharketti took possession of the dollar and the substance. Deputy Scott stated that the Defendant's response to the

---

[2] Deputy Sharketti explained that the pass-through tray allowed for property and paperwork to be passed into the jail in a secure manner.

discovery of the substance was "normal compared to any other reaction [the deputy] [had] seen, you know, just, oh I don't know how it got there, it's not mine."

Special Agent Robert Mark Young testified that, in March 2013, he worked as a forensic scientist in the forensic chemistry section of the Tennessee Bureau of Investigation crime lab. Agent Young explained that he received and tested the "rock-like substance" collected by Deputy Sharketti, which he determined weighed 0.9 grams. After testing the substance, Agent Young found that it contained cocaine base.

Frank Watkins, the Administrative Captain at the CCSD, testified that he was in charge of the video recording system at the Coffee County Jail. He explained that the cameras "detect movement and start recording at that point[.]" Captain Watkins testified that the cameras would have recorded the Defendant being booked into the jail on the night of March 7, 2013. However, he stated that he was not asked to preserve the video recording of that night. Captain Watkins explained that, if a request to preserve the video is not made, the camera eventually records over the footage because each camera "has a finite amount of space on that hard drive."

The Defendant testified that he was stopped while driving his brother's car by an officer with the Cowan Police Department around 9:00 p.m. or 9:30 p.m. on March 7, 2013. After checking the Defendant's driver's license, the officer found that there was a warrant for the Defendant's arrest out of Coffee County for a parole violation, so the officer placed the Defendant under arrest. At that time, the officer did "a complete inventory search" of the Defendant taking "everything out of [his] pockets, . . . everything that [the Defendant] had on [him][.]" The Defendant asked the officer if he could call a friend to pick up his brother's car, which the officer allowed him to do. The Defendant gave the friend his money and "everything to [his] knowledge that [he] had on [him]." A Franklin County deputy then transported the Defendant to the county line, where Deputy Sharketti picked up the Defendant. The Defendant stated that he had no money and no wallet with him at the jail. He stated that he had only a gold chain, a watch, and his cell phone. The Defendant testified that he was never handcuffed following his arrest, so he had "plenty of time" to get rid of the cocaine later found in his pocket. The Defendant agreed that Deputy Sharketti asked him numerous times before entering the jail if he had any weapons or drugs on him. The Defendant stated that he told Deputy Sharketti that he did not have any contraband "[b]ecause to [his] knowledge [he] did not." The Defendant stated that he was searched "three times by officers[.]" He stated that both the Cowan Police Department officer and the Franklin County deputy had searched him thoroughly. The Defendant then recalled:

So when [Deputy] Scott searched me, he searched me and I was turning to walk away, and I just kind of touched my side or something like

- 8 -

that and he called me back, he said, ["W]hat did you put in your pocket?["] I said, ["]I didn't put anything in my pocket.["] That's when he searched me again and there was a dollar bill in my watch pocket. And he said, ["W]hat is that?["] I said, ["M]an. I didn't know that was there.["] So I was booked.

The State called Deputy Sharketti as a rebuttal witness. Deputy Sharketti explained that, when an arrestee was booked, the arrestee's property was collected and catalogued. He stated that the jail's records showed that the Defendant had a lighter, a key, a snack, a belt, a cell phone, a gold chain, and a black jacket when he was booked into the jail.

At the conclusion of proof, the trial court included in its instructions to the jury an instruction on the State's duty to preserve evidence. Following deliberations, the jury convicted the Defendant as charged.

*Sentencing*

At a subsequent sentencing hearing, the State introduced certified copies of the Defendant's prior convictions for possession of 0.5 grams or more of cocaine with the intent to sell or deliver, a Class B felony, and sale of cocaine, a Class C felony. The State also introduced the Defendant's presentence report.

The Defendant testified that he had been to prison previously from 2007-2009. He was arrested on a parole violation in August 2010, which was later dismissed, and he was again released from prison in June 2011. The Defendant stated that, in 2012, he was arrested for DUI and violation of the implied consent law, but the DUI charge was later dismissed. He was convicted of possession of a Schedule II drug in 2013. He explained that he was under arrest for a parole violation warrant when he was charged with the instant offense. He agreed that possessing cocaine while on parole was a violation of parole. The Defendant stated that he helped to take care of his sister and that he worked as a handyman.

In determining the appropriate sentence, the trial court considered the evidence presented at the sentencing hearing, the presentence report, the principles of sentencing, the testimony of the Defendant and other witnesses, the arguments made as to the sentencing alternatives, the nature and characteristics of the criminal conduct involved, the proof of mitigating and enhancement factors, and the Defendant's potential for rehabilitation. The trial court found that the Defendant was a Range II multiple offender based on his two prior felony convictions "within the conviction class or a higher felony

class." The trial court considered the following enhancement factors as applicable to the Defendant's case:

> (1) The Defendant, before trial or sentencing, has failed to comply with the conditions of a sentence involving release into the community; and

> (2) At the time the felony was committed, the Defendant was released on parole.

As to mitigating factors, the trial court considered that the Defendant's criminal conduct neither caused nor threatened serious bodily injury. The trial court sentenced the Defendant as a Range II multiple offender to eight years and denied the Defendant's request for an alternative sentence. The trial court noted that, in deciding whether to grant or deny an alternative sentence, it considered:

> (1) The presentence report[.]

> (2) The prior criminal history of the Defendant[.]

> (3) Whether the Defendant [would] abide by the terms of probation.

> (4) Whether or not measures less restrictive than confinement have recently been applied unsuccessfully.

> (5) Whether or not a sentence of full probation would unduly depreciate the seriousness of the offense.

Lastly, the trial court determined that the Defendant's eight-year sentence should run consecutively to "all other previously imposed sentences."

The Defendant filed a timely motion for new trial and an amended motion for new trial, which the trial court denied in a written order after a hearing. This timely appeal follows.

## II. Analysis

### *Motion to dismiss indictment*

On appeal, the Defendant asserts that the trial court erred by denying his motion to dismiss the indictment based on the State's failure to preserve exculpatory video evidence. He asserts that "[i]t was apparent before the video was destroyed that it

possessed exculpatory value and that [the Defendant] would be unable to obtain comparable evidence by any other available means." The Defendant contends that the video evidence "would have been vital to his defense" and that the State's failure to preserve the evidence resulted in a fundamentally unfair trial, which could not be cured by the trial court's jury instruction on the State's duty to preserve evidence.

In *Ferguson*, our supreme court "explained that the loss or destruction of potentially exculpatory evidence may violate a defendant's right to a fair trial." *State v. Merriman*, 410 S.W.3d 779, 784 (Tenn. 2013) (citing *Ferguson*, 2 S.W.3d at 915-16). The court determined that the due process required under the Tennessee Constitution was broader than that required under the United States Constitution and rejected the "bad faith" analysis adopted by the United States Supreme Court. *Id.* at 784-85 (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), which stated that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.") Instead, the court in *Ferguson* adopted a balancing approach in which a trial court must determine "[w]hether a trial, conducted without the [lost or] destroyed evidence, would be fundamentally fair." *Id.* at 785 (quoting *Ferguson*, 2 S.W.3d at 914.)

When a defendant raises a *Ferguson* claim, a trial court must first "determine whether the State had a duty to preserve the evidence." *Merriman*, 410 S.W.3d at 785. "[T]he State's duty to preserve evidence is limited to constitutionally material evidence described as 'evidence that might be expected to play a significant role in the suspect's defense.'" *Id.* (quoting *Ferguson*, 2 S.W.3d at 917). To meet this constitutional materiality standard, "the evidence must potentially possess exculpatory value and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* (footnote omitted).

If the proof demonstrates the existence of a duty to preserve and further shows that the State has failed in that duty, a court must proceed with a balancing analysis involving consideration of the following factors:

1. The degree of negligence involved;

2. The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and

3. The sufficiency of the other evidence used at trial to support the conviction.

- 11 -

*Ferguson*, 2 S.W.3d at 917 (footnote omitted). The trial court is required to balance these factors to determine whether conducting a trial without the missing evidence would be fundamentally fair. *Merriman*, 410 S.W.3d at 785. "If the trial court concludes that a trial would be fundamentally unfair without the missing evidence, the trial court may then impose an appropriate remedy to protect the defendant's right to a fair trial, including, but not limited to, dismissing the charges or providing a jury instruction." *Id.*

This court reviews the trial court's decision concerning the fundamental fairness of a trial conducted without the missing evidence under a de novo standard of review. *Id.* at 791. The trial court's findings of fact, however, are entitled to substantial deference on appeal and are conclusive unless the evidence preponderates against them. *See id.* (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). We review the trial court's choice of remedy for a *Ferguson* violation under the abuse of discretion standard. *Id.*

In its brief, the State initially argues that it had no duty to preserve the video recording. For this duty to arise, the video recording must be expected to play a significant role in the Defendant's defense. Specifically, the video recording must have potential exculpatory value, and the Defendant must be unable to obtain comparable evidence by other reasonably available means. *Ferguson*, 2 S.W.3d at 917. Captain Watkins testified that there were cameras in the booking area that were motion-activated and, thus, would have recorded the search of the Defendant during the booking process. Therefore, the video recording was relevant evidence as to the Defendant's charge. Although the video recording is not available for this court to view, we recognize that the video recording could have been beneficial to both the State and the Defendant. The Defendant argues on appeal that the video would have shown his surprised reaction to Deputy Scott locating the cocaine in his pocket, thereby supporting his claim that he did not *knowingly* possess the controlled substance while in a penal institution. We agree with the trial court that the video recording had potential exculpatory value. Additionally, no comparable evidence could have been obtained through other means. The video recording captured by the jail surveillance system is unique; there was no testimony that other video recordings of the incident existed.[3] The State therefore had a duty to preserve the video recording as potentially exculpatory evidence. *Ferguson*, 2 S.W.3d at 917.

Because the State failed in its duty to preserve the video recording, we must determine whether the trial court abused its discretion in its choice of remedy by

_____

[3] We recognize that Captain Watkins testified that the Defendant could have requested that the video recording be saved, if he made the request within three to five weeks of the incident. However, it is not clear from the record whether the Defendant was aware that he could make such a request or if he was aware of the time limitation.

- 12 -

examining the three remaining *Ferguson* factors. *Ferguson*, 2 S.W.3d at 917. As to the degree of negligence involved in the State's failure to preserve the video recording, our supreme court stated in *Ferguson* that when potentially exculpatory evidence is lost or destroyed, negligence by the State is presumed. *Ferguson*, 2 S.W.3d at 917 n. 10. That presumption is not overcome in this case, although we agree with the trial court that there was not "a great deal of negligence involved." Because Captain Watkins had no notice that the video recording would be of any probative value, the video recording was recorded over "just in the ordinary course of the way things worked because of the way the system [was] set up."

As to the second *Ferguson* factor, we must consider the significance of the destroyed evidence in light of its probative value and the reliability of the remaining secondary or substitute evidence. There is no dispute in this case that the dollar bill containing the controlled substance was found in the Defendant's change or watch pocket during the search at the jail, and the Defendant makes no claim that deputies planted the evidence on the Defendant. The secondary evidence of the incident consisted of testimony from Deputy Sharketti, Deputy Scott, and the Defendant. The Defendant testified that he told Deputy Sharketti that he did not have any contraband "[b]ecause to [his] knowledge[,] [he] did not." The Defendant explained how he had been thoroughly searched by three officers. He explained that because they had not found the dollar bill, he did not know it was in his pocket when he entered the jail. Both Deputy Scott and Deputy Sharketti agreed that, when the dollar bill was removed from his pocket, the Defendant said, "[T]hat's not mine, I didn't know it was there." We conclude, therefore, that the video recording would not have played a significant role in the outcome of the case.

The final *Ferguson* factor requires that we consider the sufficiency of the additional evidence used at trial to support the Defendant's conviction. Deputy Sharketti testified that he conducted only a pat-down search for weapons when he took the Defendant into his custody at the Coffee County/Franklin County line. He informed the Defendant that bringing contraband into the jail would result in additional charges and asked the Defendant several times if he had any drugs or weapons before they entered the jail. The Defendant denied possessing such items, and when he was initially searched by Deputy Scott, the deputy did not locate the dollar bill. However, the Defendant recalled that he touched his side as he turned away from Deputy Scott. This caused Deputy Scott to ask the Defendant, ["W]hat did you put in your pocket?["] Deputy Scott then searched the Defendant again and found the dollar bill containing the controlled substance in the pocket. Deputy Sharketti observed Deputy Scott's search of the Defendant and, likewise, testified that Deputy Scott located the dollar bill in the Defendant's pocket. Although the Defendant testified that he did not know about the controlled substance, the jury clearly

discredited his testimony. The evidence was more than sufficient to support the Defendant's conviction.

We conclude that the absence of the video did not render the Defendant's trial fundamentally unfair as it did not hinder the Defendant "in the full and complete exposition of his theory to the jury." *Ferguson*, 2 S.W.3d at 918. The evidence against the Defendant was substantial. The loss of the recording was addressed at trial through witness testimony, and the trial court acted within its discretion by providing the jury with Tennessee Pattern Jury Instruction 42.23 on the State's duty to preserve evidence to remedy the State's failure to preserve the recording. The trial court did not err in denying the Defendant's motion to dismiss, and the Defendant is not entitled to relief.

### *Sufficiency of the evidence*

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact-finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id.* Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

As applicable to this case, "[i]t is unlawful for any person to: . . . [k]nowingly possess any [controlled substances] while present in any penal institution where prisoners are quartered or under custodial supervision without the express written consent of the chief administrator of the institution[.]" Tenn. Code Ann. § 39-16-201(b)(2) (2013). "[A] person . . . acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist," and "[a] person acts knowingly with respect to a result of the

- 14 -

person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b) (2013).

In this case, the Defendant does not dispute that he possessed a controlled substance in a penal institution. He argues only that the State did not prove he *knowingly* possessed the controlled substance. "Proof that a possession is knowing will usually depend on inference and circumstantial evidence." *State v. Brown*, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995) (citing *United States v. Pierre*, 932 F.2d 377, 392 (5th Cir. 1991)). Knowledge may be inferred from control over the place where the contraband is secreted. *See id.* The Defendant argues that because he was searched multiple times by different officers prior to the search by Deputy Scott, he had "no reason to believe or know that the cocaine remained in his pocket[.]" However, Deputy Sharketti testified that it was reasonable to assume that, after being asked three times, the Defendant would know whether he had contraband in his possession. He also testified that it would be reasonable to assume that the Defendant would have taken the opportunity to turn the item over to him. It was also possible that the Defendant believed that after going through three pat-downs without the controlled substance being found, he had successfully concealed it from the deputies, and he could bring it with him into the jail. Clearly, the jury did not accredit the Defendant's claims that he did not know the controlled substance was in his possession. The jury could infer the Defendant's knowledge based on his failure to take advantage of multiple opportunities to turn over the controlled substance, the manner in which it was concealed, and the Defendant's control over the location where the drugs were located. *See, e.g.*, *State v. Demetrie Owens*, No. M2003-01454-CCA-R3-CD, 2004 WL 2775459, at *6 (Tenn. Crim. App. Dec. 3, 2004) (finding evidence sufficient to establish that the defendant knowingly possessed a controlled substance in a penal institution based on testimony that the defendant denied having any controlled substance on his person, was informed that he would be charged with an offense if he entered the facility with contraband, and was found with 3.3 grams of cocaine in his "balled up fists" when booked into the jail), *no perm. app. filed*. Viewing the evidence in the light most favorable to the State, we conclude that the evidence is sufficient to support the Defendant's conviction. He is not entitled to relief.

### *Motion for continuance*

The Defendant asserts that the trial court erred in denying his request for a continuance in the middle of trial based on the failure of Officer Brad Weaver to appear to testify at trial. The Defendant contends that Officer Weaver's testimony would have been "extremely valuable in proving [the Defendant's] defense that he did not knowingly bring cocaine with him into the Coffee County [J]ail." The State responds that the Defendant has waived consideration of the issue by failing to raise the issue in his motion

- 15 -

for new trial, and the Defendant has not demonstrated that he is entitled to plain error relief.

Rule 3(e) of the Tennessee Rules of Appellate Procedure states that "no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for new trial; otherwise such issues will be treated as waived." This court has repeatedly determined that the failure to include an issue in a motion for new trial results in a waiver of issues, which, if found to be meritorious, would result in the granting of a new trial. *See State v. Keel*, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994). We agree with the State that in both the Defendant's original and amended motion for new trial, the Defendant failed to argue that the trial court abused its discretion in denying his motion for continuance. Accordingly, he has waived this issue. *See, e.g., State v. Willie J. Miller, Jr.*, No. M2001-01868-CCA-R3-CD, 2002 WL 1033248, at *3 (Tenn. Crim. App. May 22, 2002), *no perm. app. filed.*

However, "when necessary to do substantial justice," this court may "consider an error that has affected the substantial rights of a party" even if the issue was waived. Tenn. R. App. P. 36(b). Such issues are reviewed under plain error analysis. *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010). Plain error relief is "limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994). In order to be granted relief under plain error relief, five criteria must be met: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the accused must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is "necessary to do substantial justice." *Adkisson*, 899 S.W.2d at 640-41; *see also State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (Tennessee Supreme Court formally adopting the *Adkisson* standard for plain error relief). When it is clear from the record that at least one of the factors cannot be established, this court need not consider the remaining factors. *Smith*, 24 S.W.3d at 283. The defendant bears the burden of persuasion to show that he is entitled to plain error relief. *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007).

Here, the Defendant has failed to show that the trial court violated a clear and unequivocal rule of law. The decision of whether to grant a continuance is left to the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion and prejudice to the defendant. *State v. Vaughn*, 279 S.W.3d 584, 598 (Tenn. Crim. App. 2008). After the State concluded its case-in-chief, the Defendant requested a continuance, asserting that a witness that he had attempted to subpoena—Officer Brad Weaver—was not there. The trial court denied the request for a continuance after finding

that the Defendant had failed to issue the subpoena at least five days prior to the date of trial, as required by the local rules for the service of subpoenas. *See* TN 14th District Coffee County Rule V (providing that all subpoenas "must be placed in the hands of the Sheriff or other process server not less than five days before the date on which the case is set for trial, and unless this is done the absence of a material witness shall not be grounds for a continuance"). Moreover, the trial court found that the subpoena was not properly filed because the Defendant had not included the last known address and telephone number of the witness as required by local rule. *See id.* (stating that "[a]ll requests to the Clerk for subpoenas for witnesses to be issued henceforth shall contain the full name and last known address and telephone number of the individual to be subpoenaed"). The trial court noted that it would have been "virtually impossible" to serve the Defendant's subpoenas "given the fact [that] no addresses were on them."

The record supports the trial court's determination that the Defendant failed to comply with Rule V of the local rules; the subpoena for Officer Weaver was not timely requested and did not contain an address and telephone number for the witness. "It is well settled that the trial courts of this state have the authority to make and implement reasonable local rules of practice and procedure in their respective courts, as long as these local rules do not conflict with a substantive rule of state law." *In re Int'l Fid. Ins. Co.*, 989 S.W.2d 726, 729 (Tenn. Crim. App. 1998) (internal citations omitted); *see* Tenn. R. Sup. Ct. 18 (explaining that each judicial district may adopt "uniform rules not inconsistent with . . . the Rules of Criminal Procedure"). Accordingly, we conclude that the trial court acted within its discretion when it denied the Defendant's request for a continuance based on the Defendant's failure to comply with the local rules governing the issuance of subpoenas. *See, e.g., State v. George Robert Hamby*, No. M2014-00839-CCA-R3-CD, 2015 WL 3862688, at *6 (Tenn. Crim. App. May 28, 2015) (determining that the trial court did not abuse its discretion by refusing to accept the defendant's guilty plea when the defendant failed to comply with a local rule of practice), *perm. app. denied* (Tenn. Aug. 13, 2015). The Defendant has not shown a breach of a clear and unequivocal rule of law, and he is not entitled to relief under plain error.

### *Waiver of the right to counsel*

"Both the United States and Tennessee Constitutions guarantee an indigent criminal defendant the right to the assistance of appointed counsel at trial." *State v. Carruthers*, 35 S.W.3d 516, 546 (Tenn. 2000) (citing U.S Const. amend. VI; Tenn. Const. art. I, § 9; *Martinez v. Court of Appeal of California*, 528 U.S. 152, 154 (2000); *Gideon v. Wainwright*, 372 U.S. 335, 343-45 (1963); *State v. Small*, 988 S.W.2d 671, 673 (Tenn. 1999); *State v. Northington*, 667 S.W.2d 57, 60 (Tenn. 1984)). However, this right "does not include the right to appointment of counsel of choice, or to special rapport, confidence, or even a meaningful relationship with appointed counsel." *Id.* In

addition to the right to appointed counsel, the Sixth Amendment also affords a defendant the right to self-representation. *Northington*, 667 S.W.2d at 60.

The right to self-representation and the right to counsel have been construed to be alternative ones, meaning that "one has a right *either* to be represented by counsel *or* to represent himself, to conduct his own defense." *State v. Melson*, 638 S.W.2d 342, 359 (Tenn. 1982); *see also* U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *State v. Hester*, 324 S.W.3d 1, 30 (Tenn. 2010); *State v. Holmes*, 302 S.W.3d 831, 838 (Tenn. 2010). "The constitutional right to represent oneself can be asserted, but only after a defendant both knowingly and intelligently waives the right to the assistance of counsel." *Northington*, 667 S.W.2d at 60 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), *overruled in part on other grounds by Edwards v. Arizona*, 451 U.S. 477 (1981); *State v. Burkhart*, 541 S.W.2d 365 (Tenn. 1976)).

In exercising the right of self-representation, a defendant must: (1) assert the right to proceed pro se in a timely manner; (2) clearly and unequivocally exercise this right; and (3) knowingly and intelligently waive his right to the assistance of counsel. *Hester*, 324 S.W.3d at 30-31 (citing *State v. McCary*, 119 S.W.3d 226, 256 (Tenn. Crim. App. 2003); *State v. Herrod*, 754 S.W.2d 627, 629-30 (Tenn. Crim. App. 1988); *United States v. Bush*, 404 F.3d 263, 271 (4th Cir. 2005); *United States v. Mackovich*, 209 F.3d 1227, 1236 (10th Cir. 2000)). Generally, the waiver of the right to counsel occurs "only after the trial judge advises a defendant of the dangers and disadvantages of self-representation and determines that the defendant 'knows what he is doing and his choice is made with eyes open.'" *Carruthers*, 35 S.W.3d at 546 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

Additionally, Tennessee Rule of Criminal Procedure 44 provides, in relevant part:

(a) Right to Assigned Counsel. Every indigent defendant is entitled to have assigned counsel in all matters necessary to the defense and at every stage of the proceedings, unless the defendant waives counsel.

(b) Waiver.

(1) *Actions by Court*. Before accepting a waiver of counsel, the court shall:

(A) advise the accused in open court of the right to the aid of counsel at every stage of the proceedings; and

- 18 -

(B) determine whether there has been a competent and intelligent waiver of such right by inquiring into the background, experience, and conduct of the accused, and other appropriate matters.

(2) *Written Waiver.* A waiver of counsel shall be in writing.

(3) *Record of Waiver.* An accepted waiver of counsel shall be in the record.

Tenn. R. Crim. P. 44(a)-(b).

The determination of whether a defendant has his waived his right to counsel and exercised his right of self-representation is a mixed question of law and fact. *Hester*, 324 S.W.3d at 29. This court reviews mixed questions of law and fact de novo, with a presumption that the trial court's findings of fact are correct. *Id.* at 29-30 (citing *State v. Holmes*, 302 S.W.3d 831, 837 (Tenn. 2010)).

On appeal, the Defendant asserts that his waiver of the right to counsel was not knowing and voluntary. However, a review of the record shows that the trial court conducted a thorough colloquy with the Defendant to determine whether the Defendant's waiver of counsel was knowing and voluntary. The trial court questioned the Defendant about his knowledge of the law and his experience with the criminal justice system, and the Defendant stated that he had previously represented himself in hearings in other matters. The trial court also discussed the charge against the Defendant and the seriousness of the charge, and the Defendant repeatedly assured the trial court that he understood the nature of the charge. The trial court addressed the potential sentence exposure the Defendant faced, which the Defendant indicated he understood. The trial court advised the Defendant multiple times that he would be better served with an attorney because he had not studied the law. The trial court also advised the Defendant of the dangers of self-representation and explained that elbow counsel would not be representing him or helping the Defendant with pretrial preparations. The trial court repeatedly asked the Defendant if he was sure that he wanted to represent himself, and the Defendant insisted that he was. Further, the Defendant agreed that it was "totally [his] choice" to represent himself. The trial court concluded its examination by appointing the Defendant elbow counsel for trial. We conclude that the trial court's questioning of the Defendant established that the Defendant's waiver of counsel was knowing and voluntary. This issue is without merit.

The Defendant additionally contends that his waiver was not knowing and voluntary because the trial court failed to secure the waiver in writing. The Defendant is correct that Tennessee Rule of Criminal Procedure 44(b)(2) specifically provides that "[a] waiver of counsel shall be in writing" and that no written waiver was signed or filed in this case. However, a trial court's failure to comply with the writing requirement of Rule 44(b)(2) does not necessarily preclude a constitutionally valid waiver. *See State v. Goodwin*, 909 S.W.2d 35, 39-40 (Tenn. Crim. App. 1995); *State v. Michael Lewis*, No. W2001-03121-CCA-R3-CD, 2003 WL 1697689, at *11 (Tenn. Crim. App. Mar. 26, 2003), *no perm. app. filed*; *State v. Simmie Black*, No. 02C01-9803-CR-00081, 1999 WL 280810, at *4 (Tenn. Crim. App. May 7, 1999), *perm. app. denied* (Tenn. Sept. 25, 2000). While we stress the importance of a trial court's compliance with Rule 44(b)(2), we have concluded from our review of the record that the trial court's error in this case was harmless. As discussed, it is apparent that the Defendant knowingly and intelligently waived his right to counsel. He is not entitled to relief.

*Sentencing*

The Defendant asserts that the trial court erred by enhancing his sentence to eight years and by ordering consecutive sentencing. Specifically, he argues that the evidence was insufficient to support the trial court's consideration of one enhancement factor and that the trial court erred by failing to consider a mitigating factor put forth by the Defendant. The Defendant also contends that the trial court failed to make any findings to support the imposition of consecutive sentences and that there is no evidence in the record that consecutive sentencing was necessary and appropriate.

When the record clearly establishes that the trial court imposed a sentence within the appropriate range after "a proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). "[A]n appellate court should find an abuse of discretion when it appears that a trial court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2015), Sentencing Comm'n Cmts. To facilitate meaningful appellate review of a felony sentence, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2015); *Bise*, 380 S.W.3d at 706.

In determining the proper sentence, the trial court must consider:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in [Tennessee Code Annotated sections] 40-35-113 and [-]114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant made on the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2015); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103(5) (2015).

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in [Tennessee Code Annotated sections] 40-35-113 and [-]114.

Tenn. Code Ann. § 40-35-210(c) (2015).

Although the trial court should also consider enhancement and mitigating factors, such factors are advisory only. *See* Tenn. Code Ann. § 40-35-114 (2015); *see also Bise*,

380 S.W.3d at 698 n. 33, 704; *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id.* at 343. A trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. "[Appellate courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346.

Here, the trial court sentenced the Defendant, as a Range II multiple offender, to a term of eight years. On appeal, the Defendant does not challenge the trial court's finding that he is a Range II offender. Possession of contraband in a penal institution is a Class C felony, *see* Tenn. Code Ann. § 39-16-201(c) (2015), and as a Range II multiple offender, the Defendant's sentence range was six to ten years. *See* Tenn. Code Ann. § 40-35-112(b)(3) (2015). In determining the specific sentence within the range of punishment, the trial court found that the Defendant, before trial or sentencing, had failed to comply with the conditions of a sentence involving release into the community and that, at the time the felony was committed, the Defendant was released on parole. *See* Tenn. Code Ann. § 40-35-114(8), (13)(B) (2015). The Defendant's presentence report supports the trial court's application of these enhancement factors. The trial court also considered the mitigating factor that the Defendant's criminal conduct neither caused nor threatened serious bodily injury, *see* Tenn. Code Ann. § 40-35-113(1) (2015), and set the Defendant's sentence length at the mid-point in the range. The Defendant argues that the trial court erred by failing to consider a second mitigating factor, *i.e.*, that the Defendant, "although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct[.]" Tenn. Code Ann. § 40-35-113(11) (2015). However, as previously noted, enhancement and mitigating factors are advisory only, and the trial court was "free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Carter*, 254 S.W.3d at 343. The trial court imposed a sentence within the appropriate range that reflects a proper application of the purposes and principles of sentencing; therefore, the trial court's sentencing determinations are entitled to a presumption of reasonableness. *Bise*, 380 S.W.3d at 707. The Defendant has not established that the trial court abused its discretion in sentencing the Defendant to eight years for possession of contraband in a penal institution.

The Defendant also contends that the trial court failed to make any findings in support of consecutive sentencing. The trial court found that the Defendant committed the offense while on parole and ordered the Defendant's sentence to run consecutively to "all previously imposed sentences." Rule 32(c)(3)(A) of the Tennessee Rules of Criminal Procedure provides for mandatory consecutive sentences when a defendant has additional sentences that are not yet fully served, and the defendant is convicted of a felony committed while on parole for a felony. Tenn. R. Crim. P. 32(c)(3)(A). The record reflects that the Defendant was on parole for a conviction of possession of 0.5 grams or more of cocaine with the intent to sell or deliver. Therefore, consecutive sentencing was mandatory, and the trial court appropriately ordered that the Defendant serve the eight-year sentence consecutively to his sentence for possession of 0.5 grams or more of cocaine with the intent to sell or deliver. The Defendant is not entitled to relief.

## III. Conclusion

For the aforementioned reasons, the judgment of the trial court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE